Filed 7/16/26  Zamora v. Ramos CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| VERONICA ZAMORA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HAZEL RAMOS, <br><br> Defendant and Respondent. | B337175 <br><br> (Los Angeles County Super. Ct. No. 23PSRO00968) |

APPEAL from an order of the Superior Court of Los Angeles County, Melissa C. Lyons, Judge.  Affirmed.

Veronica Zamora, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

# INTRODUCTION

Veronica Zamora appeals from the trial court's order denying her request for a civil harassment restraining order against her neighbor across the street, Hazel Ramos, under Code of Civil Procedure section 527.6.[1]  Zamora argues her evidence satisfied the requirements for a restraining order.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Zamora Files a Request for a Civil Harassment Restraining Order*

Zamora and Ramos live approximately 90 feet from each other, on opposite sides of the street.  In 2021 Ramos obtained a civil harassment restraining order against Zamora under section 527.6.  The order enjoined Zamora from harassing, intimidating, contacting, threatening, or disturbing the peace of Ramos and her family and directed Zamora to stay at least 10 yards away from Ramos and her son Troy A.  The court renewed the restraining order in 2022.

On June 1, 2023 Zamora filed a request for a civil harassment restraining order against Ramos under section 527.6.  Zamora alleged multiple incidents of harassment.  First, Zamora claimed that on May 31, 2023 she was outside her house when, "all of a sudden," Ramos walked her dog toward her; later that morning, while Zamora's mother Rosalina Zamora (Rosalina) sat in her car, Ramos "accelerated in reverse to hit" Rosalina's car.  Second, Zamora alleged that on April 10, 2023 Ramos walked

---

[1]    Statutory references are to the Code of Civil Procedure.

2

toward Zamora and continued to approach her as Zamora backed away; Ramos subsequently got into her truck, put it in reverse, and hit Zamora's gate. Third, Zamora claimed that on March 22, 2023 Ramos "went into a cursing rampage" and shouted at Zamora: "Fuck you up again, Fuck you up again, Fuck you, your family, your friends, you ain't shit," and "stay in your fuckin yard where you belong." Fourth, Zamora alleged that on February 28, 2023 Ramos walked her dog in front of Zamora's house and cursed at Zamora. Fifth, Zamora claimed that on October 12, 2022, as she was placing her trash bin in the street, Ramos drove her car into the trash bin (while Zamora "was still holding it"), which caused Zamora to be "so scared that [she] called 911 for assistance."[2] And sixth, Zamora alleged that on November 29, 2020 Ramos "physically assaulted" her.

The trial court issued a temporary restraining order that enjoined Ramos from harassing, intimidating, contacting, threatening, or disturbing the peace of Zamora and her family and directed Ramos to stay at least 100 yards away from Zamora and her family; the court later reduced the stay-away distance to 10 yards during periods when Ramos needed to enter or leave her house. The court set the temporary restraining order to expire at the end of the hearing on Zamora's request for a restraining order.

B.    *The Trial Court Denies Zamora's Request*

At the hearing on Zamora's request for a restraining order, which took place over five days, Zamora testified about a number

_____

[2]    Zamora corrected the year of this incident to 2021 at the hearing on her request for a civil harassment restraining order.

of incidents where Ramos engaged in conduct that caused her to fear Ramos. The alleged incidents largely comprised Ramos cursing at or threatening Zamora or Rosalina while walking or driving by Zamora's house; in some of the incidents, Ramos drove her truck in or near Zamora's driveway, which, according to Zamora, prevented her from entering or leaving her house. Zamora described in detail the incident where Ramos drove her truck toward Zamora and struck a trash bin she was holding.

Zamora introduced videos that purported to corroborate her account of each incident. The court viewed each video and described what the court saw and heard in the recording. For example, for the trash bin incident, the court stated that the video showed Ramos's white truck hit some trash bins and that, though an object partially blocked the view, it appeared Zamora "was possibly" holding onto a trash bin at the time; the court also observed Zamora appeared to be pushing the bins into the street "as the white vehicle [was] pulling up."[3] Regarding an incident in November 2021, Zamora asserted Ramos threw eggs at Zamora's car, but the court, upon reviewing the video, stated, "You don't actually see anyone throwing eggs." And regarding an incident in April 2023, the court stated that the video showed Ramos was backing up her truck because there was a car parked in front of her and that Ramos did not "hit the vehicle in any way," was not "excessively close in any way," and was "not leaving at [an] excessive speed . . . such that one could say she's using the car to sort of threaten."

The court observed that some of the videos showed Zamora saying loudly that Ramos was "walking by" her house while

---

[3] Referring to the trash bins, Ramos testified Zamora "threw them in front of [her] moving vehicle."

4

Ramos was walking her dog. Addressing an incident on February 28, 2023, where Zamora asserted Ramos was "verbally harassing" her, the court stated Ramos was essentially saying, "Stop talking to me. I'm walking my dog." In addition to her videos, Zamora presented the testimony of Rosalina, who, for the most part, corroborated Zamora's description of some of the incidents. The court allowed Zamora to question Ramos about certain incidents and viewed the videos Ramos submitted. Troy testified that, one day in December 2023, as he walked across the street from his house to his neighbor's house (located next door to Zamora's house), Zamora said, "Here comes Troy, her terrible son . . . . He claims he's terrified of my mother, yet he's here."

The court concluded that, though "both parties have issues with credibility," Zamora had the burden of proof and that, of the 28 videos the court viewed, with the exception of two where Ramos made "threatening comments" to Zamora, the "bulk of the videos . . . are essentially Ms. Zamora stalking Ms. Ramos's movements . . . via her video camera."[4] The court found that the "vast majority" of the videos depicted Ramos "doing everyday things" and that, "at various times, inevitably, when Ms. Ramos comes out of her house, Ms. Zamora appears." The court observed that, whenever Ramos walked by Zamora's house, she did not look in Zamora's direction, while Zamora "loudly" yelled

---

[4] The court found Ramos made threatening comments in two videos, one taken on February 28, 2023 and one on March 22, 2023. As discussed, with respect to the February 28, 2023 incident, the court commented Ramos was trying to get Zamora to stop talking to her. For the March 22, 2023 incident, the court stated the video showed a woman yelling "off-camera," "I'm going to lock your ass up," and then saying a string of expletives.

5

at the camera, said Ramos's name, and commented on whether Ramos was "afraid of her."  The court stated that Zamora's "loud proclamation" of Ramos's name, when Ramos was "doing nothing more than an everyday task," failed to demonstrate Zamora was "in any way, shape, or form afraid of Ms. Ramos."  The court concluded that "none of the behavior" in the videos was "consistent with someone who [was] afraid."  Addressing Zamora, the court stated, "You do not yell someone's name when you are afraid.  You do not accost their child when you are afraid and yell the child's name and talk to the camera . . . when all he [was] doing [was] crossing the street to his neighbor's house to get a ride to school."

The court denied Zamora's request for a restraining order, and discharged the temporary restraining order.  Zamora timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

Section 527.6, subdivision (a)(1), provides:  "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."  (See *Olson v. Doe* (2022) 12 Cal.5th 669, 677; *E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 698.)  Section 527.6, subdivision (b)(3), defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."  (See *E.G.*, at p. 698; *Hansen v. Volkov* (2023) 96 Cal.App.5th 94, 103.)  The

6

course of conduct "must be that which would cause a reasonable person to suffer substantial emotional distress" and "must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)  The court may issue a restraining order only after finding "by clear and convincing evidence that unlawful harassment exists."  (§ 527.6, subd. (*i*)(1); see *Olson*, at pp. 677-678; *Hansen*, at p. 103.)

"'[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof.'"  (*Hansen v. Volkov*, *supra*, 96 Cal.App.5th at p. 104; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)  However, "'where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment."  [Citations.]  Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*."  [Citation.]  Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'"  (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651; see *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979.)  ""Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him [or her] to prevail on appeal by arguing the evidence compels a judgment in his [or

7

her] favor.  That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found [that party's] evidence lacks sufficient weight and credibility to carry the burden of proof."'" (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579.)

> B.      *Zamora Forfeited Her Argument, and the Evidence Does Not Compel a Finding in Her Favor*

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]  . . . 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.'" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; accord, *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 527.)  "'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim.  The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.'" (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619-620; accord, *County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 463.)  "Consequently, '[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.  [Citation.]' [Citation.]  Likewise, "'[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.  [Citation.]" [Citations.]'

[Citation.] These rules apply both to parties represented by counsel and self-represented parties." (*L.O.*, at p. 620.)

Zamora argues: "The legal standard for issuing a restraining order requires only that there be a reasonable fear of harm or harassment. I submit that the evidence presented clearly meets the standard and that the continued harassment has caused a real and tangible fear for my safety." In her opening brief, however, Zamora has not provided any citations to the record or to relevant case authority to support her argument, thus forfeiting it. (See *L.O. v. Kilrain*, *supra*, 96 Cal.App.5th at p. 620.)

Forfeiture aside, Zamora's argument lacks merit because the evidence does not compel a finding in Zamora's favor as a matter of law. The trial court questioned the veracity of Zamora's testimony and found the videos she presented, which in the court's words were "the best evidence independent of" her testimony, did not show Zamora feared Ramos. For example, contrary to Zamora's assertions, the trial court found the videos did not show Ramos throwing eggs at Zamora's house or Ramos driving her truck in a threatening manner near Zamora's house. The court determined the various videos showed Ramos going about her daily life and Zamora trying to "get her attention" by yelling out her (or Troy's) name, which undermined Zamora's claim she felt threatened by or feared Ramos. (See *E.G. v. M.L.*, *supra*, 105 Cal.App.5th at p. 700 ["in deciding whether to issue the order, the trial court views the evidence as a whole"].)

Zamora does not cite anything in the record that compels a finding Ramos harassed her within the meaning of section 527.6, subdivision (b)(3). Her argument the evidence she presented showed "fear of harm or harassment" essentially asks us to reweigh the evidence and reassess the court's credibility findings,

which we cannot do.  (See *E.G. v. M.L., supra*, 105 Cal.App.5th at p. 699 ["we must 'not reweigh the evidence itself' [citation], but must instead 'view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence'"]; see also *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 ["We do not determine credibility or reweigh the evidence."]; *Jennifer K. v. Shane K., supra*, 47 Cal.App.5th at p. 579 ["'in a bench trial, the trial court is the "sole judge" of witness credibility'"].)  In light of the trial court's credibility finding against Zamora and court's finding Zamora's videos did not show she feared Ramos, Zamora cannot show the record compels a finding she met her burden under section 527.6.

Zamora asserts Ramos's "[o]ngoing and escalating behavior" has "caused [her] severe psychological distress."  To the extent Zamora is arguing incidents that occurred after the trial court's decision show the court erred in denying her request for a restraining order against Ramos, we do not consider matters that were not before the trial court.  (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 ["'It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'"]; *Higginson v. Kia Motors America, Inc.* (2026) 118 Cal.App.5th 316, 354 [same].)

## DISPOSITION

The order denying Zamora's request for a restraining order against Ramos is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.